IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

GENEY J. P.,[1]                            )
                                           )
        Plaintiff,                         )
                                           )
vs.                                        ) Case No. 18-cv-608-CJP[2]
                                           )
COMMISSIONER OF SOCIAL                     )
SECURITY,                                  )
                                           )
        Defendant.                         )

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff, represented by counsel, seeks judicial review of the final agency decision terminating her Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

In a decision dated August 2011, plaintiff was found disabled beginning in February 2007. (Tr. 101-07). Following a periodic review, the agency determined that she was no longer disabled as of April 1, 2015. (Tr. 114). Plaintiff requested a hearing before an ALJ. ALJ Diana Erickson held a hearing at which plaintiff appeared without counsel. (Tr. 27-67). After the hearing, the ALJ obtained additional medical evidence and notified plaintiff by letter of the new evidence and

---

[1] The Court will not use plaintiff's full name in this Memorandum and Order in order to protect her privacy. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 16.

her right to request a supplemental hearing. (Tr. 275-76). Plaintiff wrote a letter in response in which she addressed the post-hearing evidence, but did not request another hearing. (Tr. 277). In March 2017, the ALJ issued a decision finding that plaintiff was able to perform a reduced range of light work as of April 1, 2015. (Tr. 15-22). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to comply with HALLEX I-2-528D by failing to schedule a supplemental hearing.

2. The ALJ failed to properly consider RFC.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes and regulations. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §

423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Once a claimant has been awarded benefits, the agency undertakes a periodic review of continued eligibility to receive benefits. 20 C.F.R. §§404.1589, 404.1594(a). Social Security regulations set forth a sequential eight-step inquiry to determine whether a claimant is under a continuing disability. The eight steps are set forth in 20 C.F.R. §404.1594(f):

1. Is the beneficiary engaging in substantial gainful activity? If yes (and there is no issue of a trial work period), the beneficiary is no longer disabled.

2. If the beneficiary is not engaging in substantial gainful activity, does his impairment or combination of impairments meet or equal the Listings? If yes, disability is continued.

3. If the beneficiary's impairments do not meet or equal the Listings, has there been medical improvement? If yes, the sequential analysis proceeds to step four; if no, it proceeds to step five.

4. Is the medical improvement related to the beneficiary's ability to work, i.e., has there been an increase in the residual functional capacity? If yes, the sequential analysis proceeds to step six; if no, it proceeds to step five.

5. If there is no medical improvement, or if the medical improvement is not related to the beneficiary's ability to work, does one of the exceptions to medical improvement apply? If the exception does apply, the beneficiary is no longer disabled. If none of the exceptions apply, the sequential analysis continues.

6. If medical improvement is related to the ability to work, are all current impairments severe in combination? If not, the beneficiary is no longer disabled.

7. If the impairments are severe, the Commissioner determines the beneficiary's residual functional capacity (RFC), and considers whether he can do his past work. If the beneficiary can do his past work, disability will be found to have ended.

8. If the beneficiary cannot do his past work, the Commissioner decides whether he can do other work given his RFC, and considering his age, education, and past work experience. If the beneficiary can do other work, he is no longer disabled; if not, disability is continued.

The continuing disability determination is to be made "on the basis of all the evidence available in the individual's case file, including new evidence concerning the individual's prior or current condition" and on a "neutral basis . . . without any initial inference as to the presence or absence of disability being drawn from the fact that the individual has previously been determined to be disabled." 42 U.S.C. § 423(f); 20 C.F.R. § 404.1594(b)(6).

Medical improvement is any decrease in the medical severity of the beneficiary's impairment; the determination is based on improvement in symptoms, signs and/or laboratory findings. 20 C.F.R. § 404.1594(b)(1). Medical improvement is related to ability to work if there has been a decrease in the severity of the impairment(s) and an increase in the functional capacity to do basic work activities. 20 C.F.R. § 404.1594(b)(3). The comparison point is the time of the most recent favorable medical decision that the individual was disabled or continued to be disabled. 20 C.F.R. § 404.1594(b)(7). In this case, the comparison point used by the ALJ was August 11, 2011, the date of the most recent favorable decision that plaintiff was disabled. (Tr. 17).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the

Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Erickson undertook the eight-step analytical process described above. She determined that, as of the comparison point decision, plaintiff had medically determinable impairments of rheumatoid arthritis and autoimmune hepatitis. She had not engaged in substantial gainful activity through the date of the decision and had not developed any additional impairments since the date of comparison

point decision.

At steps three and four, the ALJ determined that there had been medical improvement and that such improvement was related to plaintiff's ability to work. Proceeding to step six, she determined that plaintiff's impairments were severe. She determined that plaintiff had the RFC to perform work at the light exertional level, limited to only frequent handling and fingering bilaterally; no exposure to hazards or extreme cold; and no climbing of ladders, ropes, or scaffolds. Relying on the testimony of a vocational expert, the ALJ concluded that plaintiff could not do her past relevant work as a CNA, but she could perform other jobs which exist in significant numbers in the national economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff.

1.   **Agency Forms**

Plaintiff was born in 1986 and was almost 31 years old on the date of ALJ Erickson's decision. (Tr. 204).

In October 2014, plaintiff said she was disabled because of rheumatoid arthritis (RA) and autoimmune hepatitis. She did not use an assistive device. (Tr. 208). She reported that she got her kids off to school in the morning, cleaned up after their breakfast, then took a nap and tried to do chores around the house.

When her kids got home from school, she got them a snack and helped with homework. She helped her husband make dinner if she felt up to it. (Tr. 218-219). Plaintiff said she could lift only ten pounds and could walk for only ¼ of a mile. Using her hands caused moderate to severe pain. (Tr. 240).

### 2. Evidentiary Hearing

Plaintiff was not represented by an attorney at the evidentiary hearing in October 2016. (Tr. 30-32).

Plaintiff said she saw her regular physicians, Drs. Korenblat and DiValerio, about twice a year. The ALJ noted that they were missing some records and that she would get them. (Tr. 35-38).

Plaintiff lived with her husband, children aged 7 and 9, and a 15-year-old niece. She had medical insurance. She graduated from high school and attended some college classes. She was certified as a CNA. She had worked as a CNA in a nursing home. (Tr. 41-45).

Plaintiff said that her condition had not changed since the ALJ decision in 2011, except that her blood work showed that her liver enzymes were better. She said she was unable to work because of pain in all her joints. She gave herself Enbrel injections for RA and took other medications by mouth. She had good days and bad days. (Tr. 51-54).

A vocational expert (VE) also testified. The ALJ asked her a hypothetical question which corresponded to the ultimate RFC findings. The VE testified that this person could not do plaintiff's past work, but she could do other jobs at the

light exertional level.   (Tr. 61-62).

   3.   **Medical Records**

In April 2015, Vittal V. Chapa, M.D., performed a consultative examination of plaintiff.   She walked with a normal gait and had no muscle weakness or atrophy. There was no tenderness, heat, swelling, or thickening of any of her joints.   She had a full range of motion in all her joints.   Hand grip was normal on both sides. Plaintiff denied any "specific symptoms" from her autoimmune hepatitis and reported improvement in her RA symptoms since starting Enbrel a year earlier. (Tr. 301-303).

Dr. Kevin Korenblat treated plaintiff for autoimmune hepatitis.   In November 2014, he noted that, except for her complaints of "colicky abdominal pain" in the morning, she had "remained stable and denie[d] any signs or symptoms of liver disease."   He also noted that she was "stable" on her immunosuppressive medications.   (Tr. 314).   In August 2015, Dr. Korenblat described plaintiff's lab results as "completely normal."   (Tr. 421).   Three months later, her lab results related to liver function were again normal.   (Tr. 419).   In December 2015 plaintiff reported to Dr. Korenblat that she "remained well" other than increased nose bleeds.   Dr. Korenblat noted that plaintiff "denie[d] any signs or symptoms of chronic liver disease." He wrote that she "remain[ed] in stable biochemical remission" on her medication.   (Tr. 428).   She had stable lab results in February 2016.   (Tr. 426).   In September 2016, after reviewing plaintiff's lab results, Dr. Korenblat wrote that he was "pleased to report" that her liver function and liver

enzymes were "normal." (Tr. 403).

Dr. Richard DiValerio, a rheumatologist, treated plaintiff for RA. Dr. DiValerio treated plaintiff with injections and various medications (Tr. 283, 358, 360). She saw him in April 2015, November 2015, and September 2016. At each visit, she complained of pain in her hands, feet, and knees. At each visit, on physical examination, there was no tenderness, swelling, or instability in her arms and she had a full range of motion in her arms. Her gait was normal. She had no tenderness in her neck and had no arthritic abnormalities. (Tr. 282-284 358-59, 361). At the September 2016 visit, plaintiff told Dr. DiValerio that her energy and sleep were "O.K." (Tr. 358). He noted that she had no muscle tenderness, atrophy, or weakness, and she had full range of motion in all muscle groups with no pain. Her gait was normal (Tr. 359).

### 4. State Agency Reviewers' Opinions

In April 2015, Richard Bilinsky, M.D., assessed plaintiff's RFC based on a review of the records. (Tr. 305-312). In his opinion, plaintiff was able to do work at the medium exertional level. He said she could sit, stand, or walk for six hours each in a workday and could push and pull without limitation. She had no postural limitations. Dr. Bilinsky noted that, because of the nature of RA, plaintiff's symptoms would be expected to wax and wane.

In September 2015, Prasad Kareti, M.D., reviewed Plaintiff's records on reconsideration and agreed with Dr. Bilinsky's opinion. (Tr. 355).

## Analysis

Plaintiff first argues that the ALJ failed to comply with HALLEX I-2-528D in that she failed to schedule a supplemental hearing.

Plaintiff cites no authority for the proposition that the HALLEX Manual creates legally enforceable rights. In fact, the Seventh Circuit has explicitly declined to decide whether the HALLEX Manual "creates rights that litigants can enforce in court." *Dean v. Colvin*, 585 Fed. Appx. 904, 905 (7th Cir. 2014). It is worth noting that the Supreme Court has held that the agency's Claims Manual "has no legal force" because it not a regulation. *Schweiker v. Hansen*, 101 S. Ct. 1468, 1471 (1981). HALLEX is not a regulation either, and, in the absence of any contrary authority, this Court declines to find that it creates legally enforceable rights.

In any event, ALJ Erickson notified plaintiff by letter of the new evidence gathered after the hearing and explained that plaintiff had the right to request a supplemental hearing. (Tr. 275-76). Plaintiff received the ALJ's letter and responded to it. Plaintiff's letter discussed the new medical records, but she did not request a supplemental hearing. (Tr. 277). She asserts now that she did not understand that she could request a supplemental hearing, but she offers no plausible explanation of how that could be. Her first point is denied.

For her second point, plaintiff argues that the RFC determination was not supported by substantial evidence.

Plaintiff argues that the opinions of the state agency consultants were entitled

to no weight because the doctors are not specialists in treating RA or autoimmune hepatitis, the opinions did not account for the waxing and waning nature of RA, and the opinions are inconsistent with plaintiff's complaints of continued pain in her hands and feet.

Plaintiff concedes that she experienced medical improvement since the comparison point decision on August 11, 2011. See, Doc. 21, p. 9. She argues that her improvement was not related to her ability to work. Specifically, she contends that she continues to suffer from pain in her hands, which limits her ability to manipulate large and small objects to occasionally rather than frequently.

It is true that the state agency consultants were not specialists in treating plaintiff's conditions. However, the specialty of the doctor is only one factor to consider in weighing medical opinions. "State agency medical and psychological consultants are highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the Act." SSR 96-6p, 1996 WL 374180, at *2. The ALJ is required by 20 CFR §§ 404.1527(f) and 416.927(f) to consider the state agency physicians' findings of fact about the nature and severity of the claimant's impairment as opinions of non-examining physicians; while the ALJ is not bound by the opinion, he may not ignore it either, but must consider it and explain the weight given to the opinion in his decision. *Id*.

Plaintiff asserts that the state agency consultants did not take into account the waxing and waning nature of her symptoms, but she is incorrect. Dr. Bilinsky explicitly acknowledged that, because of the nature of RA, plaintiff's symptoms

would be expected to wax and wane.

Plaintiff points to no medical evidence that was overlooked or ignored by the ALJ. She relies exclusively on her own subjective complaints for her assertion that pain limits her to only occasional use of her hands. That is not enough. The ALJ was not required to credit her subjective allegations. "Applicants for disability benefits have an incentive to exaggerate their symptoms, and an administrative law judge is free to discount the applicant's testimony on the basis of the other evidence in the case." *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006). Further, plaintiff has not challenged the ALJ's credibility determination here.

Plaintiff has not identified any error requiring remand. Even if reasonable minds could differ as to whether plaintiff was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). ALJ Erickson's decision is supported by substantial evidence, and so must be affirmed.

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Erickson committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security finding plaintiff no longer disabled and terminating her Disability Insurance Benefits is AFFIRMED.

The Clerk of Court is directed to enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   December 28, 2018.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
